UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEORGIOS KONSTANTINIDIS,
    *Plaintiff*,

v.

FIRST STUDENT INC.,
    *Defendant*.

No. 3:14-cv-00844 (JAM)

**RULING GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Georgios Konstantinidis worked as a school bus mechanic for defendant First Student Inc. In 2009, plaintiff was injured at work. He filed for workers' compensation benefits and was not medically cleared to return to full duty work until 2012, by which time the maintenance facility that he had worked at had closed down. Defendant told plaintiff there were no available positions for him at another facility.

    Plaintiff has filed this lawsuit, claiming that defendant discharged him because he filed a claim for workers' compensation benefits and claiming that he was discharged in violation of public policy. Defendant has now moved for summary judgment, and I will grant defendant's motion on the ground that no genuine issue of fact or law supports plaintiff's claims.

## BACKGROUND

    The following facts are set forth on the basis of the evidentiary submissions and as viewed in the light most favorable to plaintiff. Plaintiff was employed since 2007 as a school bus mechanic by defendant at its maintenance facility in Wilton, Connecticut. Plaintiff was a member of a union, and the terms of his employment were governed by a collective bargaining agreement.

In December 2007 and January 2008, plaintiff sustained two minor injuries while on the job. After these injuries, plaintiff received a promotion and wage increase in both July 2008 and October 2008. On April 24, 2009, plaintiff injured his elbow while working on a bus. He reported the injury and sought medical treatment. His supervisor, Edward Lizotte, allegedly reacted to plaintiff's report with some hostility. Three days later, plaintiff was medically released to return to work but with some restrictions such as not lifting more than 10 pounds.

Because of these restrictions, defendant assigned plaintiff to transitional duty. Transitional duty is defined by defendant's employee handbook as "a temporary process (up to 90 days) that allows employees to remain productive in the workforce while they regain their full capacity during the recovery/rehabilitation process." Doc. #53-1 at 42. Plaintiff signed a form with this new assignment stating that "I also understand that Transitional Duty is temporary and not a permanent position and will last only until I am able to return to Full Duty without restriction but no longer than 90 days without additional company approval." *Id.* at 44.

While plaintiff was on transitional duty, Lizotte appeared angry with plaintiff and "micro-managed" and yelled at him. Plaintiff concedes, however, that Lizotte also yelled at other employees who were not injured.

When plaintiff's transitional duty expired, defendant extended his transitional duty for another 90 days. On October 30, 2009, plaintiff completed his second round of transitional duty and was told that he had to stop working at the facility. He had not yet been released by his physician to return to full work without physical restrictions. Plaintiff filed a workers' compensation claim on February 3, 2010.

Nearly three months later, on April 30, 2010, Lizotte sent plaintiff a letter stating in relevant part his understanding that plaintiff remained unable to work and that defendant

intended to discharge plaintiff if he could not return to work to perform the essential functions of his job:

> First [S]tudent records reflect that you have not been on active status since *October 30, 2009*. It is company policy to review the status of inactive employees after six (6) months and[,] where warranted, administratively separate them from employment.
>
> It is First Student's understanding that you are unable to perform the essential functions of your job, with or without reasonable accommodation. If this information is incorrect, please advise use no later than *May 7, 2010*. If we do not hear from you by this date, your employment with First Student will be administratively terminated at that time.

Doc. #53-1 at 51.

Upon receiving this letter, plaintiff contacted Robert Flynn, his union representative. Flynn then wrote to defendant stating "[i]t is my position that when Mr. Konstantinides [sic] is released to return to work with no restrictions, he is returned with full seniority rights and all privileges he is entitled to under the Collective Bargaining Agreement," and that "[s]hould the Company not allow Mr. Konstantinides [sic] to return to duty at the time of his full release, the Union will pursue any action taken to the fullest extent, up to and including termination." *Id*. at 53.

Plaintiff did not provide defendant with a work release from his physician by the deadline of May 7, 2010. Accordingly, defendant considered plaintiff administratively terminated as of that date.

More than two years then passed without plaintiff's return to work or any other relevant change concerning his employment status. In the meantime, on July 1, 2012, defendant closed the Wilton facility where plaintiff had worked. Later that month, on July 23, 2012, plaintiff was cleared by his physician to return to full duty work without any restrictions, and defendant was advised that plaintiff was now cleared to return to work.

The collective bargaining agreement provided for rights to a seniority-based recall in the event of an employment lay-off. On August 7, 2012, Flynn spoke to Vincent Cappiello, defendant's regional operations manager. They agreed that plaintiff would be treated as though he had been terminated for lack of work and would have recall and seniority rights at defendant's maintenance facility in Norwalk, Connecticut, and that these rights would be protected for one year, until July 23, 2013.

Before his one-year recall period had elapsed, plaintiff drove to the Norwalk facility. Without getting out of his car, plaintiff spoke to an unknown man who stated that he had been transferred to the Norwalk facility from another, possibly non-union facility, leading plaintiff to believe that he had been passed over for an available position. Plaintiff reported the encounter to Flynn, and Flynn spoke again to Cappiello who stated that the man plaintiff spoke to had not been given improper priority over plaintiff but was filling a temporary position.

Flynn told plaintiff that he believed that the collective bargaining agreement required defendant to give plaintiff priority over a non-union employee for the temporary assignment. Plaintiff then filed a union grievance, complaining that other mechanics were hired at or transferred to the Norwalk facility without him being recalled to employment.

Before a hearing took place on plaintiff's grievance, Flynn worked out a resolution with defendant, and a settlement agreement was drafted, but plaintiff did not sign the agreement despite Flynn's urging. Flynn sent plaintiff a letter stating that if he did not hear from him by May 9, 2014, he would be left with "no other choice than to sign the [settlement agreement] and forward it to First Student." Doc. #53-1 at 75.

Plaintiff never responded to Flynn, and soon instead filed the instant court complaint in Connecticut Superior Court. Defendant timely removed the action to this Court, in part on the ground of the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Plaintiff's amended complaint alleges two state law claims. First, he claims that he was subject to discrimination on the basis of his having filed a claim for workers' compensation benefits, in violation of Conn. Gen. Stat. § 31-290a. For this claim, he contends that he "was an employee of the defendant," that he was medically "cleared by his physician to return to work at full duty as a mechanic with no physical restrictions," and that "[d]espite being cleared for full duty, the defendant terminated the plaintiff's employment on pretextual grounds, and [that defendant] has failed and/or refused to allow [plaintiff] to return to work." Doc. #43 at 4. Second, he claims that "defendant's termination of the plaintiff's employment and subsequent refusal to rehire him constitute a wrongful and unlawful termination of the plaintiff in violation of public policy." *Id.* at 5.

## DISCUSSION

The principles governing a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The evidence adduced at the summary judgment stage must be viewed in the light most favorable to the non-moving party and with all ambiguities and reasonable inferences drawn against the moving party.

*See, e.g.*, *Tolan*, 134 S. Ct. at 1866; *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). All in all, "a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan*, 134 S. Ct. at 1866 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### *Count One - Workers' Compensation Discrimination*

Plaintiff seeks relief pursuant to Conn. Gen. Stat. § 31-290a, which provides in relevant part that an employer may not "discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for workers' compensation benefits or otherwise exercised the rights afforded to him pursuant to the provisions of this chapter." A court's consideration of this type of discrimination claim is governed by the oft-stated *McDonnell Douglas* burden-shifting analysis. Thus, a plaintiff who seeks relief under § 31-290a must first establish a *prima facie* case of discrimination; if so, then the employer must produce evidence of a legitimate, non-discriminatory reason for its action; and if the employer does so, then the plaintiff carries the ultimate burden to show that a discriminatory reason more likely motivated the employer's action. *See, e.g.*, *Barbee v. Sysco Connecticut, LLC*, 156 Conn. App. 813, 819–20 (2015).

As an initial matter, I note that plaintiff's discrimination claim focuses on defendant's conduct beginning in July 2012, at which time plaintiff had been medically cleared to return to full duty. The amended complaint does not allege a claim of discriminatory conduct prior to that time, and the three-year statute of limitations (*see* Conn. Gen. Stat. § 52-577) would otherwise bar plaintiff from basing his retaliation claim on any adverse actions by defendant before 2012. Of course, such prior events may be relevant insofar as they shed light on allegedly actionable

6

events that occurred within the statute of limitations period. *See, e.g.*, *Marini v. Costco Wholesale Corp.*, 64 F. Supp. 3d 317, 326 (D. Conn. 2014).

I also note that the amended complaint alleges discrimination against plaintiff "for having filed a claim for Workers' Compensation benefits." Doc. #43 at 4. Although plaintiff contended at oral argument that his claim was one of discrimination or retaliation for his exercise of a broad range of rights that are protected under the workers' compensation law, the complaint gives notice of only a single triggering act—his filing of a claim for workers' compensation benefits—and I will hold plaintiff to the terms of his amended complaint.

Turning to July 2012 and thereafter, I conclude that there is no triable issue of fact with respect to whether defendant took adverse action against plaintiff because of his exercise of any rights protected under workers' compensation laws. To begin with, plaintiff has not offered any *direct* evidence of discriminatory animus by any decision-maker who was in a position to decide whether plaintiff should work for the company once he was fully physically able and medically cleared for work in July 2012. To the extent that plaintiff points to hostile remarks by a former supervisor, Lizotte, these remarks were not directed at plaintiff's exercise of his workers' compensation rights in 2012. Indeed, by 2012, Lizotte was out of the picture; the Wilton facility was closed, and Lizotte was not at the Norwalk facility. Plaintiff points to no other direct evidence of animus by Cappiello or any other supervisor.

In the absence of direct evidence of discriminatory animus, plaintiff's claim rises or falls on whether there is sufficient circumstantial or indirect evidence of discriminatory or retaliatory intent. The claim falls. First, any inference of retaliation is attenuated because of the lengthy period of time that elapsed between plaintiff's filing of his workers' compensation claim in February 2010 and the later failure of defendant—nearly two-and-a-half years later in July

7

2012—to reinstate plaintiff's employment. *See Riddle v. Citigroup*, 640 Fed. Appx. 77, 79 (2d Cir. 2016) (a "gap of some sixteen months is too long to support a retaliation claim based solely on temporal connection"); *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 131 (2d Cir. 2012) (although no bright line establishes causal relationship between protected activity and retaliatory action, "courts in this circuit have typically measured that gap as a matter of months, not years"); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 409 (S.D.N.Y. 2013) (two year gap too long), *aff'd*, 586 Fed. Appx. 739 (2d Cir. 2014).

      Second, it is undisputed that, by the time that plaintiff was medically cleared in late July 2012 to return to full service duty, his former job and workplace no longer existed. Defendant had lost its contract to furnish bus service for the Wilton school system, and the Wilton shop was closed. The fact that defendant had lost the contract upon which plaintiff's employment depended and that plaintiff's former job no longer existed is significant evidence of a legitimate business reason for defendant not to reinstate plaintiff's employment. Nor is there a triable issue of fact to establish that a permanent position was available at the Norwalk facility during the seniority-preference period from July 23, 2012, to July 23, 2013.

      Third, plaintiff was an at-will employee, subject to the protections afforded by the collective bargaining agreement. Nothing in the agreement gave him a right in perpetuity for defendant to hold his job open and for plaintiff to continue to be employed by defendant while he was unable to work at full capacity. Although defendant agreed upon plaintiff's announcement of medical clearance in July 2012 to afford him seniority rights to any position at the Norwalk facility, there is nothing in the agreement itself that mandated the grant of this benefit. The fact that defendant afforded plaintiff this seniority benefit despite it not being required under the agreement is additional evidence that undercuts any inference of discriminatory animus.

Plaintiff complains that, apart from any job openings at Norwalk during the seniority-preference period, he applied for but was not hired for other jobs with defendant at other Connecticut facilities after the seniority-preference period ended. Plaintiff claims that, throughout 2012 and 2013, he applied for positions "in person, and by responding to advertisements posted by First Student and its agents themselves" but that he was not hired. Doc. #54 at 36. Plaintiff further claims that each time he "inquired about a job, or submitted an [a]pplication, he received no response from First Student—until January 22, 2014, when he was told he was not 'qualified' to work as a mechanic for First Student." *Id.* at 37. But the facts of record do not support a genuine issue of discriminatory animus from the failure of defendant to hire plaintiff for other positions outside the Norwalk facility, because plaintiff has done nothing to show that he was plainly more qualified than any other applicants. *See Larocca v. Frontier Commc'ns, Corp.*, 2016 WL 74393, at *4 (D. Conn. 2016) (noting that a plaintiff who challenges an employer's failure to hire him for a job because of his superior qualifications must adduce evidence to show that no reasonable employer would have declined to hire plaintiff rather than others who were hired for open job positions).

Plaintiff argues that a discriminatory animus may be inferred from the fact that defendant's treatment of plaintiff purportedly violated a separate state law, Conn. Gen. Stat. § 31-313(a)(1), that required defendant to assign light-duty work to plaintiff for so long as he was unable to return to his full-load duties.[1] I do not agree. As an initial matter, a violation of

---

[1] The statute provides in relevant part: "Where an employee has suffered a compensable injury which disables him from performing his customary or most recent work, his employer at the time of such injury shall transfer him to full-time work suitable to his physical condition where such work is available, during the time that the employee is subjected to medical treatment or rehabilitation or both and until such treatment is discontinued on the advice of the physician conducting the same or of the therapist in charge of the rehabilitation program or until the employee has reached the maximum level of rehabilitation for such worker in the judgment of the commissioner under all of the circumstances, whichever period is the longest." Conn. Gen. Stat. § 31-313(a)(1).

§ 31-313(a)(1) is not itself actionable in court except by way of a claim that may be brought before the Workers' Compensation Commission. *See* Conn. Gen. Stat. § 31-313(a)(2); *Clouston v. On Target Locating Servs.*, 2005 WL 2338883, at *9 n.4 (D. Conn. 2005). Nor did plaintiff plead in his complaint that defendant violated § 31-313(a)(1). *See Mamudovski v. BIC Corp.*, 78 Conn. App. 715, 733–34 (2003) (affirming preclusion of evidence regarding violation of § 31-313 to support a retaliation claim under § 31-290a where plaintiff failed to plead this theory of liability in the complaint).

In addition, plaintiff has not established that defendant violated § 31-313(a)(1), much less that he sought relief as required before the Workers' Compensation Commission; the statute conditions any obligation to assign light-duty work on the availability of such work, *Chiaia v. Pepperidge Farm, Inc.*, 24 Conn. App. 362, 368 (1991), and plaintiff has not established that such light-duty work remained available after the expiration of his two 90-day terms of transitional duty work. In any event, even if I assume defendant acted in violation of rights protected under § 31-313(a)(1), this alone does not suffice to create a genuine issue of fact of discriminatory or retaliatory intent to support plaintiff's § 31-290a claim.

### *Count Two – Violation of Public Policy*

Plaintiff brings a second claim for wrongful discharge in violation of public policy. The Connecticut Supreme Court has recognized "a common law cause of action in tort for the discharge of an at will employee if the former employee can prove a demonstrably *improper* reason for dismissal, a reason whose impropriety is derived from some important violation of public policy." *Geysen v. Securitas Sec. Servs. USA, Inc.*, 322 Conn. 385, 407 (2016). But this kind of wrongful discharge claim is available only to at-will employees, not to employees—like plaintiff—whose employment was protected by a just-cause provision of a collective bargaining

agreement. *See D'Amato v. S. Connecticut Gas Co.*, 2000 WL 34325258, at *3 (D. Conn. 2000); *Wilhelm v. Sunrise Northeast, Inc.*, 923 F. Supp. 330, 336 (D. Conn. 1995). Nor has plaintiff established a demonstrably improper reason for his termination that would allow for a discharge-in-violation-of-public-policy claim. *See Geysen*, 322 Conn. at 407–09 (describing "narrow" circumstances that may allow for discharge-in-violation-of-public-policy claim). Accordingly, plaintiff's second claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Doc. #51) is GRANTED, and plaintiff's motion to strike (Doc. #59) is DENIED for substantially the reasons set forth in defendant's opposition memorandum (Doc. #60). Because I conclude that no genuine issue of fact remains as to the merits of plaintiff's state law claims, there is no need at this time to consider defendant's alternative arguments that plaintiff's claims are federally preempted by the terms of the collective bargaining agreement or that they are barred by any settlement agreement negotiated by plaintiff's union representative on his behalf.

The Clerk of Court shall close the case.

It is so ordered.

Dated at New Haven this 17th day of October 2016.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge